Good morning, Your Honor. May it please the Court, Ian Silverberg on behalf of Terrence Bohl, the appellant who is here with me this morning. The trial court in this matter granted summary judgment on this case involving the Americans with Disabilities Act, finding that Mr. Bohl was not a qualified individual with a disability. We take the position that there was ample evidence submitted in opposition to the summary judgment motion to support our contention that Mr. Bohl is, in fact, a qualified individual with a disability and that this matter should have gone to the jury. Which issue are you urging, that he was disabled from a major life function or activity or that he was a qualified individual? Which one? He is both qualified to perform the essential functions of the job and he was also suffering from a disability. Well, whether he's disabled, you've got the issues of first under the ADA before it was amended and all of that. But assuming even, let's just say that he's disabled, he still has to be a qualified individual for you to prevail on this, correct? That's correct. And how can you show that when he couldn't get his, he couldn't complete his post-certification, you know, to do that? You know, how they don't have to, I know that you're, you know, they don't have to change the job and the job as it existed was that you might have to fight with people and do all of those things and he wasn't able to complete his post-certification to show that. So how can he be a qualified individual with or without accommodation? Thank you for that question, Your Honor. And that went into our argument as to what, in fact, is an essential function of the job. If the court will remember, they were considering making the senior marshal position a strictly administrative position as early as 1999 before Mr. Bull even suffered his injury. Well, I know, but they didn't. They didn't. And they don't, you know, the law is they don't have to change a job. I mean, they could have changed it. You know, they could have changed it and made it that. But they didn't. And apparently, and the judge said, you know, we don't, you know, we can't afford to do that. We need to be able to have our senior marshal go into court and relieve the other marshals as far as that goes. And it was clear that that required wrestling with people, as it were. And, you know, I'm sure if you read the newspaper, you know as early as like about as recently as 10 days ago, a judge was attacked by a defendant in court right during the trial. Your Honor. And the bailiff didn't take care of it. The investigating officer shot and killed the person trying to kill the judge. And certainly Mr. Bull was able to use his firearm. That was something that he was able to do. But he wasn't qualified on it, was he? He could do his firearm. He was not able to do the physical grappling. The baton and the wrestling and the. . . That's exactly right. Yeah. Was he authorized to carry a firearm if he didn't qualify? He needed to qualify, and there was a way he could qualify to still have his firearm, but there were certain deficiencies in his post-certification. Well, but the problem is we don't want to kill everyone if we can avoid it. You know, we might want to take a few people into custody, you know, if possible. I understand, Your Honor. I mean, that's not the, you know, not to say that I'm not being. . . You know, if you've got to kill someone, you've got to kill someone. But, you know, you. . . But we hope that because you can't, you know, bend or twist, that your first response isn't going to be shoot someone. I certainly understand that, Your Honor. I believe restructuring is exactly something that the court should look at, whether the job could be restructured in order to make the accommodation. Was there any case that requires it? I don't have the case right in front of me, although I do believe I cited it in my brief as some of the EEOC guidelines. Sorry, I interrupted you. Go ahead.  Was that contention made that the job should be restructured? Not only was that contention made, Your Honor, but Human Resources, Ms. Harrison and Mr. Waterman, the risk manager, were under the impression that that's exactly what was going to happen. They had made the proposal, even as I stated, before 1999, before the injury. And it was Judge Sage, the municipal court judge there, who frankly without any consideration of ADA jurisprudence, said we're not going to do this. Well, they could have done that, and we wouldn't be here if they had done that. They could have, but they have to be legally required to do that. And that's where I'm struggling, that the law seems to be squarely against you. They can change the job if they want to something else, but they don't have to. And the senior marshal job required the person to be post-certified to complete, and your client could not be. So how can he be a qualified individual under that prong? I certainly understand the court's point there, but my point is that there was never an undertaking by the city of Sparks to go through what in fact are the essential functions of the senior marshal position. So how can they come and say, well, here's my list of essential functions, when they're not essential? In fact, when Mr. Bull was serving as the senior marshal with his bad back, when they were allowing this accommodation, he had hardly any incidents where he did have to wrestle anybody. The position could very easily have been made a purely administrative position, and they chose not to without any undertaking as to what is essential and what is not. And I believe that they are required to do that, Your Honor. A defendant employer can't just come up. Tell me a case that says they have to change the job description as it existed, required post-certification and all of those things, and being able to relieve, you know, the other marshals. Tell me a case that says they have to change the job. Your Honor, I believe I did cite one in my brief, but I don't have it right here at my fingertips. I don't think you cited something that said exactly that. I believe the EEOC regulations as well contemplate restructuring of a job position. By example, what if one of the job requirements were that you have pink hair? I mean, clearly that's not related. Now, I certainly understand how there is some job relatedness, but when they've already been accommodating Mr. Bull in his disabled capacity and making it a purely administrative position, how can they then come and say? Well, except for that, your argument on that is mixing apples and oranges, because they were required under statute until someone becomes, until it becomes a permanent situation, they have to, you know, they have to do certain things. And those are apples and oranges, which is what they have to do in the interim before they take the final. And there was, there's a Nevada statute that requires them to. The workers' comp statute. Exactly, that they have to do that. But you can't turn that into saying they have to, that's, you're mixing apples and oranges there. But what it does show, your Honor, is that the position could be modified. That's exactly what it shows. Why were they able to make this modification? Are you saying, your Honor, that under the workers' comp statute, it's okay to put the entire court at risk but not under the ADA? I don't believe so. I don't believe that they were, I don't believe that risk was there. I believe that risk was, frankly, conflated. And the statement, and this goes into my regarded as argument as well, where summary judgment was also granted, where Judge Sage's justification was you don't supervise someone if you can't do the job yourself, which has nothing to do with the ADA and reasonable accommodation. You say there was nothing that defined what the characteristics were. I see something in the city of Sparks that says what the definition is. The class characteristics, it says, participates in serving and processing arrest warrants, maintains courtroom security during proceedings, protects the court participants and removes unruly spectators, transports subject to and from the courtroom. Those are all pretty significant characterizations of the job. Right. And that's why they have a staff of marshals that do that, whereas the senior marshal position rarely gets involved in that. And it is, and if you look at the at the Is that what the facts of the situation show? I thought the facts showed that he got involved quite a lot. He got involved quite a lot in his position as marshal. He was a marshal beforehand. If you look at the deposition testimony that I provided, Your Honor, and please do, you'll see that afterwards, after his injury and when he was serving in the administrative capacity, one he could grapple if he had to, but that it was very seldom that he ever went out and served warrants. It's a very demanding administrative job, which is why they have the senior marshal position in the first place. If you look at the list of. Well, before he was injured, however. Before he was injured, he was not senior marshal either. He was a regular marshal. And certainly those were the senior marshal. There was a I believe somebody else was filling that position. I don't recall who preceded Mr. Bull. I think that was in. It's probably in my learned colleague's statement of facts. It was very thorough. I don't remember who preceded Mr. Bull, but he was a marshal for many years, and he certainly did get involved in those sort of altercations. But as senior marshal, it's very administrative. Your time is just about up. Do you want to save the balance for rebuttal? Your Honor, yes, I will. Thank you very much. Okay. Good morning, Your Honor. May it please the Court. Good morning. On behalf of the city of Sparks. The Court has hit the nail on the head, so to speak. Some of the facts that. Well, thank you. We try to. But some of the facts that have been asked or presented to the Court are not entirely accurate. Mr. Bull was the senior marshal both before his injury and after his injury. He was a senior marshal when he was injured in the defensive tactics training, which he needed to do in order to get his post-certification. Well, let me ask you this. This is not. There was another issue that was a little bit. I'm not sure it's really developed even in the record to the extent that there can really be a claim on it, but why was Terry Bull not offered one of the replacement positions described in the record? Isn't it a reasonable accommodation to offer him such a position? Some of the positions that were presented, there were some issues with regard to his qualifications. There were some issues. The city has to do it within 80 percent of his salary. There were some salary issues. There were many frozen issues or frozen positions. So those were the issues as to why he wasn't actually placed in those, and that's why they gave him vocational rehabilitation. Right. Well, you know, it's a little unclear in the record, and if it is unclear why Bull was not offered a replacement position, does that create a question of material fact sufficient to overcome summary judgment? It doesn't because you never get there to the reasonable accommodation if he was never disabled, and that's what the Court based its entry of summary judgment on. Well, on the disability, if we deal with the disability part of it, that we have, you know, the ADA has either been amended or clarified, depending on how you want to look at it, and in the amended ADA it talks about twisting and bending, which seems to be what his problem was. So wouldn't he be disabled if the amended ADA applied to him? Well, first of all, as the Court has received our supplemental briefings indicating that the new ADA does not apply because that became effective January of 2009, and there's no indication of any retroactive. Well, we don't have any Ninth Circuit case law on that. And I understand that in the most recent case that we cited, the Court decided not to address that issue or reach that issue because it didn't have to. Well, is it right for this Court to address it? I don't believe that it is for the same reason. Did you cite the case of Rohr v. Salt River Project? That's correct, Your Honor. And didn't in that one, didn't the opinion say the ADAA clarifies Congress's intent? That's correct, Your Honor. So if it clarifies Congress's intent, then isn't it retroactive? Not necessarily, because it changes the obligations of the parties from before. And we cited the other cases as we addressed the response to the supplemental brief of the appellant where other courts have, in fact, addressed the issue of retroactivity and have found that it is not retroactive because it would change the obligations of the parties. In this case, it would make the city responsible for something that in 2005 it was not responsible for. In fact, it goes even further than that. Well, that's what retroactivity does. Well, except that it's not. And if it clarifies, my understanding, if it clarifies, then it's retroactive. In this case, it clarifies. How do we distinguish that? In the case law from this circuit, the Court talks about the amendment is not controlling. It's entitled to substantial weight. So the Court doesn't necessarily apply it in terms of retroactivity, but it certainly can consider it as it had in the case of Rohr. It didn't consider it. It discussed it, but it didn't need to reach the issue because of the facts that were before the Court. Now, in this case, even if the Court considered retroactivity and considered the ADAA as applicable, Mr. Bull is still not – there are no facts indicating that he was disabled under the ADAA, either under an actual or a regarded as, because there's nothing to indicate that because he couldn't bend or twist, he could not engage in any major life activity. Let me – okay. That presents complicated issues. But from the standpoint whether it's the new ADA or the old ADA or what we apply, does he still have to show he's a qualified individual in order to defeat summary judgment? Absolutely. Because if he's disabled but he's not qualified for the position, then we never get anywhere beyond that. He has to be, and that's what the ADA says. Whether you look at it under the ADA or the ADAA, you still have to be a qualified individual with a disability. Ms. Mercado. Yes, sir. During the period of time before he reached maximum medical improvement, he was working, right? He was working, yes. As what? He was working in the city's administrative offices, helping put together an emergency management. Did he have a job title? He did not. He wasn't senior marshal? He was a senior marshal, but he was not working his function in the court. He was working at City Hall. So you gave him a light-duty job expressly fabricated for him? Well, they gave him a light-duty job filling in whatever jobs needed to be filled in for the city. But all administrative. He didn't have to serve warrants. He didn't have to grapple with recalcitrant, orange-coated defendants. Correct, because he wasn't working at the court. What Penny Harrison explained in her deposition is when there's an injured employee, they go and try to find a job for them, not a position, which is a vacant position. But if there are duties to be done, they try to use their employees to do those duties rather than placing them or creating a position for them, which is the court pointed out. He paid as a senior marshal. Correct. But he was doing administrative tasks not involving physical involvement. Correct. And that was the concern. And the job description seems to say, and, you know, and I asked him to say, why isn't this apples and oranges? Why aren't you conflating? Because when someone's injured, you have a responsibility under the Nevada Code to assign them to light duty, seeing if they can recover. Right? But why, but I think Appellant's argument is, all right, you were able, that's what you did for that period of time. Everyone seemed to function with him doing what he was doing at that point in time. Why can't, you know, why wouldn't it just be reasonable that that's what he can do and the courts were running fine and all of that and just leave it that, let him have the position that way? Because there was no position, Your Honor. There was just, there were just duties that needed to be fulfilled. There was not a position to put him into that was a budgeted position. He was not working at the court. He hadn't worked at the court since before his second surgery. And the duties that they're saying that he was a marshal and all of those public safety functions are only for the regular marshals is inaccurate because the job description that we submitted to the court at the record at 125 and 126, that's the senior marshal's job description. Those are the essential functions of the senior marshal. And Mr. Boal admitted that he's the one who wrote those essential functions. So he does not take issue with them, or at least he did not. So are you saying that is undisputed in the record? I believe it is, Your Honor. There's nothing to dispute. In fact, when, during his deposition when I presented the essential functions to him, I asked him, do you take any issue with this? And he said, no, I wrote it. So there's nothing to dispute there. There was also no dispute that he couldn't perform any of those essential functions with regard to the public safety aspect of it. Those aspects which I read earlier and you're hearing through now are actually the definition of the duties of the senior marshal. That's correct, Your Honor. And that's exactly why I asked him, can you do those things? And he said, no, I can't. As of the time of that he was transitioned into vocational rehabilitation, he could not do those things. He couldn't do them until after, basically after this case had begun. But at that point, he could not carry a firearm. So as the Court said, I think somewhat facetiously, you can't just shoot somebody because you can't bend and twist. Well, he couldn't even carry a gun because he hadn't been qualified. Now, would he have gotten qualified later? I don't know. But we do know that at the time the vocational rehabilitation was offered to him and he accepted it. Apparently later he got better. And then by the time he got better, the position had been filled? That's correct. And that was in October of 2002, after he had been on vocational rehabilitation for six months and had received the benefit of the vocational rehabilitation and the partial disability rating. So at that point, which goes to another question as to whether he was actually disabled, it has to be permanent or long-term. Obviously, if in October of 2002 he got 100% better and was able to go back, then he wasn't disabled under the ADA. If the Court doesn't have any further questions, I see I have 18 minutes left and I will submit. Eight seconds. Seconds, I'm sorry. I could talk for 18 more minutes. But based on the record. Time flies when you're having fun. It does indeed. Yeah. I would submit that the District Court was correct in granting summary judgment on the base. You said it did. All right. Thank you for your argument. Mr. Silverberg, you only have a few seconds, but I'll give you a minute. I'll give you a minute for rebuttal. The case I cited, Your Honor, was the Barnett v. U.S. Air, Inc. Ninth Circuit case about restructuring, modifying a cargo position in that case to completely remove the physical aspects of it that that plaintiff in that case could not do. So I believe there is authority, Your Honor, in this circuit, that modifying a position is certainly something that is recognized as an obligation of an employer to do. In order to determine if he's a qualified individual, we have to know, can he do the essential functions of the job? And that inquiry, the essential functions of the job, what's essential and what's not is a question of fact for the jury to decide. This should not have been decided. And I do recall this in the record, that your client wrote the specs for what a senior marshal does. So how is that really disputed, what the job requires? Well, we still need to know whether it's essential or not. He did write this, but that doesn't, one, he's not a lawyer, two, and certainly didn't anticipate this coming. And we know that he did serve in a purely administrative capacity after his injury at the courthouse. It wasn't only at the city manager. Before he went to the city's manager doing clerical stuff, he was at the courthouse serving in the capacity of senior marshal in an administrative capacity. All right. Your time has expired. Thank you very much. Thank you both for your argument. This case will stand submitted. The next case on calendar, Scott Wood v. Valentine, surfacing 0815049, was submitted on the briefs and will stand submitted as of this date. The next case, Kristen Michelle v. Kathniss Operating Company, 0716786, was submitted on the briefs and will be submitted as of this date.
judges: Hug, Callahan, Bea